**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DENISE BELL,

Plaintiff,

v.

TOWER MANAGEMENT SERVICE, L.P. et al.,

Defendants.

Civil Action No.: 07-CV-5305(FLW)

**Opinion**

**WOLFSON, United States District Judge:**

Presently before the Court is a motion, filed by defendants Tower Management Service, L.P., (d.b.a. SunnyBrae Apartments); Barbara Perry; John Does 1-10; and John Doe Corporations 1-10 (collectively "Defendants"), to dismiss all claims of plaintiff Denise Bell ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)6. Plaintiff brings two counts under N.J.S.A. 10:5-12, the New Jersey Law Against Discrimination ("NJ-LAD"), and a third count under the Fair Housing Amendments Act ("FHAA").[1] The Court has considered the parties' moving, opposition and reply papers, as well as the parties' supplemental papers. For the reasons that follow, the Court grants Defendants' motion to dismiss Plaintiff's FHAA claim without prejudice, and Plaintiff is

[1]Although Plaintiff brings a claim under the "Federal Fair Housing Act," Plaintiff's citation to 42 U.S.C.A. § 3601 et seq. indicates that the Plaintiff proceeds under the Fair Housing Amendments Act of 1988. See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains, 284 F.3d 442, 445 (3d Cir. 2002) (plaintiffs brought suit under the "Fair Housing Amendments Act of 1988 ('FHAA'), 42 U.S.C. § 3601 et seq.").

granted leave to amend the Complaint if she can, in good faith, plead a causal nexus between her disability and the requested accommodation, as explained herein. Further, the Court will not rule on Plaintiff's remaining state law claims until it can be ascertained whether Plaintiff can sufficiently plead an FHAA claim, because if not, the Court declines to exercise supplemental jurisdiction over the state law claims.

**I. Background and Procedural History**

Since Defendants move to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiff's allegations to be true.

Plaintiff suffers from a number of disabilities, including a stroke that left her with expressive aphasia and reduced reflexes, that "have rendered her unable to work." Amended Complaint ("Complaint"), ¶7. The "Social Security Administration has adjudicated [Plaintiff] to be disabled and unable to work as of February 23, 2004." Id. at ¶8. She receives benefits under the federal Supplemental Security Income program and was approved for a personal "tenant-based" rental assistance voucher under the rental assistance program sponsored by the State of New Jersey under N.J.S.A. 52:27D-287.1 et seq. and regulations governing that program, N.J.A.C. 5:42-1.1 et seq. ("S-RAP"). This entitled her to a rent subsidy for a one-person household. Id. at ¶9. The S-RAP program provides participants with an income-based rental assistance grant, which allows them to seek market-based housing despite their low personal incomes. Id. at ¶11. Specifically, the "S-RAP program assures that the cost of an apartment will be affordable to the plaintiff and other participants in the program by ensuring that a portion of the rental payment will be paid by the State of New Jersey." Id. at ¶12.

In November 2005, Plaintiff applied for a one-bedroom apartment at defendant

Sunnybrae Apartments, which requires applicants to show a minimum income of $28,000 annually, or $2,333.33 per month. Id. at ¶¶13, 15. Defendants "consider all sources of income in arriving at the minimum income amount" and "view the S-RAP payment as dollar value income," even though it subsidizes a percentage of a tenant's rental obligation. Id. at ¶15. Plaintiff's total monthly income at the time of her application, including social security income ($610.25) and potential funds from S-RAP ($874)[2], would not exceed $2,333.33, and hence her annual income was below the minimum income requirement. Id. at ¶¶14-18.

At various times in December 2005, Plaintiff informed Defendants that her ability to meet her rent obligations "should not be an issue because the monies paid by S-RAP are calculated as a percentage of her rental obligation sufficient to ensure that rent will be affordable to her." Id. at ¶19. Further, she requested that the minimum income policy be waived as a reasonable accommodation of her disability, which "prevented her from working and thus meeting defendants' minimum income policy." Id. Defendants refused to waive the minimum income requirement. Id. at ¶20.

In March 2006, Plaintiff found another suitable apartment with a higher rent. Id. at ¶¶23-24. From March 2006 to February 2007, the rent was $915 per month, with Plaintiff paying $238, and the S-RAP program paying the difference of $677. As of February 2007, the base rent became $930 per month, with Plaintiff paying $214 and the S-RAP program paying the difference of $716. Id. at ¶¶24-26. Had Defendants accepted Plaintiff as a tenant, her required

---

[2]Because the New Jersey Department of Community Affairs does not calculate the dollar value of the S-RAP subsidy until after a Request for Tenancy has been received by the prospective landlord, the exact value of Plaintiff's S-RAP subsidy could not be calculated. The amount listed in the text, $874, assumes that Plaintiff's entire rent would be subsidized. Id. at ¶¶16-18.

contribution - taken out of her social security income - would have been less than the above amounts. Id. at ¶28.

Plaintiff filed this lawsuit on April 17, 2007, in the Superior Court of New Jersey, Mercer County, asserting several state law claims. Defendants' Brief, Exhibit A. The court dismissed Plaintiff's Complaint without prejudice, providing for the right to amend. Id. at Exhibit C. Plaintiff filed an Amended Complaint on October 4, 2007, adding a federal claim under the FHAA. Id. at Exhibit D. Defendant removed the case to this Court on November 5, 2007.

**II. Discussion**

**A. Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up

thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

**B. Plaintiff's FHAA Claim**

**1. The Elements of an FHAA Reasonable Accommodation Claim**

Plaintiff claims that Defendants violated the FHAA, 42 U.S.C.A. §§ 3601 et seq., by failing to provide a reasonable accommodation for Plaintiff's disability in the form of a waiver to Defendants' minimum income requirement. The FHAA provides in pertinent part:

> [I]t shall be unlawful-- . . .
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>     (A) that buyer or renter,
>     (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>     (C) any person associated with that buyer or renter.

42 U.S.C.A. § 3604. Under the FHAA, discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Id. at § 3604(f)(3)(B). The elements of an FHAA failure to accommodate claim are as follows:

> In order to make out a claim for a Fair Housing Act violation based on failure to provide a reasonable accommodation, [Plaintiff] must show: i) that he is suffering from a disability as defined under 42 U.S.C. § 3602(h)(1); ii) that the Defendants knew or reasonably should have been expected to know of the disability; iii) that reasonable accommodation of [Plaintiff's] disability might be necessary to afford him an equal opportunity to use and enjoy his dwelling; and iv) that the Defendants refused to make a reasonable accommodation.

United States v. Port Liberte Condo 1 Ass'n, Inc., Docket No. 04-2783, 2006 WL 2792780, *5 (D.N.J. Sept. 27, 2006) (citation omitted); see also Feeland v. Sisao, Docket No. 07-3741, 2008 WL 906746, *3 (E.D.N.Y. Apr. 1, 2008). Thus, "[t]o establish a prima facie case, a plaintiff must show that the requested accommodation was necessary in order for handicapped persons to have an equal opportunity to use and enjoy a dwelling." Dr. Gertrude A. Barber Center, Inc. v. Peters Tp., 273 F.Supp. 2d 643, 652 (W.D. Pa. 2003) (citing Lapid-Laurel, 284 F.3d at 457). Defendants' motion to dismiss addresses only the third element: whether Plaintiff has plead sufficient facts to satisfy "the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." Lapid-Laurel, 284 F.3d at 457.

**2. Second and Seventh Circuit Precedent**

The Third Circuit has yet to address the precise question posed by Defendants' motion: whether the FHAA reasonable accommodation requirement extends to rules, policies and practices that pose obstacles to disabled persons because of their economic circumstances, when such circumstances are caused by the plaintiff's disability. However, Defendants point out that the Second and Seventh Circuits have clearly answered this question in the negative.

In Salute v. Stratford Greens Garden Apartments, 136 F.3d 293 (2d Cir. 1998), the Second Circuit held that the FHAA's accommodation requirement does not apply to a landlord's decision to reject a prospective disabled tenant because of his reliance on low-income assistance from the federal government, specifically, the Section 8 program. "When a Section 8 certificate holder finds an apartment that meets the applicable rent guidelines, and the landlord has agreed to participate in the Section 8 program, the tenant pays in rent an amount not exceeding 30% of

the tenant's gross income, and the government contracts with the private landlord to pay a subsidy equal to the remainder of the market rent." Salute, 136 F.3d at 296. The court found that a "landlord's participation in the Section 8 program" was not an "'accommodation' (regardless of its reasonableness) within the meaning of the statute." Id. at 301.

The plaintiffs in Salute tried to bring their claim within the ambit of the FHAA by arguing that their economic status, and hence need for the Section 8 program, was caused by their disability: "[T]hey claim an entitlement to an accommodation that remedies their economic status, on the ground that this economic status results from their being handicapped." Id. The court rejected this claim, holding that "it is fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps." Id.

The court found that "[o]rdinarily, the duty to make reasonable accommodations is framed by the nature of the particular handicap." Id. (citations omitted). The court held that the plaintiffs' claim - that their economic circumstances flowed from their disabilites, and hence ought to be accommodated - was a different kind of claim:

> Plaintiffs seek to use this statute to remedy economic discrimination of a kind that is practiced without regard to handicap. The "opportunity to use and enjoy" language of the FHAA reinforces the ability of people with handicaps to have the same opportunity as similarly situated persons who have no evident handicaps. What stands between these plaintiffs and the apartments at Stratford Greens is a shortage of money, and nothing else. In this respect, impecunious people with disabilities stand on the same footing as everyone else. Thus, the accommodation sought by plaintiffs is not "necessary" to afford handicapped persons "equal opportunity" to use and enjoy a dwelling. See 42 U.S.C. § 3604(f)(3); see also United States v. California Mobile Home Park Management Co., 29 F.3d 1413, 1417 (9th Cir.1994).
>
> Congress could not have intended the FHAA to require reasonable accommodations for those with handicaps every time a neutral policy imposes an

> adverse impact on individuals who are poor. The FHAA does not elevate the rights of the handicapped poor over the rights of the non-handicapped poor. Economic discrimination-such as the refusal to accept Section 8 tenants-is not cognizable as a failure to make reasonable accommodations, in violation of § 3604(f)(3)(B).

Id.; see also Brighton Village Nominee Trust v. Malyshev, Docket No. 00-12311, 2004 WL 594974, *7 (D. Mass. Mar. 23, 2004) (relying on Salute to reject an FHAA claim "seek[ing] financial assistance to remedy [plaintiffs'] economic condition").

The Seventh Circuit adopted a similar view in Hemisphere Building Co. v. Village of Richton Park, 171 F.3d 437 (7th Cir. 1999). A developer sought to build residences specially designed to meet the needs of wheelchair-bound persons, but zoning problems prohibited him from building the homes in the most cost-effective manner:

> The Village Planning Commission approved both applications but the Village Board of Trustees, which has the ultimate decision-making power, turned them down. It offered to rezone the lot to R-3, which would permit up to 7.3 dwelling units per acre. But that would have required the developer to scale back his planned construction from 8 units to 6 . . . He believed that with fewer units over which to spread the cost of the land, he would have to increase the price of the units from $90,000 to $100,000. He didn't think he could find buyers among the handicapped at that higher price, so he turned down the Village's offer.

Hemisphere Building Co., 171 F.3d at 438-39.

The developer argued that the village's zoning laws should accommodate his plan as a reasonable accommodation under the FHAA, and that the court must "balance the interest of Richton Park in adhering to its zoning ordinance . . . against the interest of handicapped people in being able to obtain housing suitable for their special needs at the lowest possible price." Id. at 439-40. The Seventh Circuit declined to undertake that inquiry, holding that the FHAA accommodations provision does not require "consideration of handicapped people's financial

situation." Id. at 440. The court reasoned:

> To require consideration of handicapped people's financial situation would allow developers of housing for the handicapped to ignore not only the zoning laws, but also a local building code that increased the cost of construction, or for that matter a minimum wage law, or regulations for the safety of construction workers. Anything that makes housing more expensive hurts handicapped people; but it would be absurd to think that the FHAA overrides all local regulation of home construction . . . .
>
> The result that we have called absurd is avoided by confining the duty of reasonable accommodation in "rules, policies, practices, or services" to rules, policies, etc. that hurt handicapped people by reason of their handicap, rather than that hurt them solely by virtue of what they have in common with other people, such as a limited amount of money to spend on housing.

Id. at 440 (citations omitted) (emphasis in original); see also Wisconsin Community Services, Inc. v. City of Milwaukee, 465 F.3d 737, 749 (7th Cir. 2006) ("We have enforced [the 'equal opportunity' element of the FHAA] by asking whether the rule in question, if left unmodified, hurts 'handicapped people by reason of their handicap, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on housing'") (quoting Hemisphere Building Co., 171 F.3d at 440). Because the village's zoning decision hurt the disabled individuals by making their proposed housing more expensive, i.e., "by virtue of what they have in common with other people, such as a limited amount of money to spend on housing," the court found that their request for a reasonable accommodation was beyond the scope of the FHAA. Hemisphere Building Co., 171 F.3d at 440.

Application of the analysis of either the Second or Seventh Circuits would lead to the rejection of Plaintiff's reasonable accommodation claim. Plaintiff argues that her "disability has led to her unemployment and reliance on SSI, income that does not satisfy Defendants' minimum-income requirement." Plaintiff's Opposition Brief, 13. According to the Second and

Seventh Circuits, to mandate that Defendants provide Plaintiff - but not non-disabled, impecunious persons - with an exemption to Defendants' minimum income policy would be to impermissibly "elevate the rights of the handicapped poor over the rights of the non-handicapped poor," Salute, 136 F.3d at 301, and bend a rule that does not "hurt handicapped people by reason of their handicap, rather than that hurt them solely by virtue of what they have in common with other people, such as a limited amount of money to spend on housing," Hemisphere Building Co., 171 F.3d at 440 (emphasis in original).[3]

However, given the facts plead by Plaintiff, this Court need not decide whether the Second and Seventh Circuits' interpretation of the phrase, "may be necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C.A. § 3604(f)(3)(B) is correct. Even if I were to reject those decisions as predicated on an overly narrow reading of the FHAA's reasonable accommodation requirement, see Salute, 136 F.3d at 308-11 (Calabresi, dissenting), nonetheless I would still find that, according to Third Circuit reasoning, § 3604(f)(3)(B) requires some causal nexus between a disabled plaintiff's disability and her need for an accommodation. Lapid-Laurel, 284 F.3d at 459. As explained below, Plaintiff's Complaint fails to sufficiently allege such a causal nexus, and thus her claim is dismissed without prejudice.

---

[3]It should be noted that both Salute and Hemisphere Building Co. were decided prior to the Supreme Court's decision in U.S. Airways v. Barnett, 535 U.S. 391 (2002), which, according to Plaintiff, requires a different analysis. This contention is considered infra at § II.B.4. The Seventh Circuit has said that Barnett does not alter Hemisphere Building Co.'s analysis of the "'necessity' element as it has been defined under the Rehabilitation Act, the FHAA and Title II of the ADA." Wisconsin Community Services, 465 F.3d at 754. The court stated: "Fairly read, Barnett did not deal with the issue of necessity-causality, which was addressed in the cases we discussed earlier. Rather, it dealt with the second question that courts must confront in Title II accommodation cases: whether the accommodation was reasonable. Yet, this element cannot be reached until it has been determined that an accommodation is necessary because a person's disability is the cause for his being denied the service or benefit." Id. at 755.

**3. The Causal Nexus Requirement**

In discussing whether an accommodation is "necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling," Lapid-Laurel, 284 F.3d at 457, the Third Circuit approved of the analysis of the Fourth and Sixth Circuits: "The key to their analysis is that the plaintiff in an FHAA reasonable accommodations case must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." Id. at 459 (emphasis added). With respect to the meaning of "equal opportunity," the court referred to the Sixth Circuit's analysis:

> Turning first to the meaning of "equal opportunity," the court cited the House Report on the Act, which states that the FHAA was designed to " 'end the unnecessary exclusion of persons with handicaps from the American mainstream.'" (quoting H.R. Rep. No. 711, 100th Cong., 2d Sess. 18, reprinted in 1988 U.S.C.C.A.N. 2173, 2179). From this, the court concluded that the FHAA defines "equal opportunity . . . [to] giv[e] handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream."

Id. (quoting Smith & Lee Associates, Inc., v. City of Taylor, 102 F.3d 781, 794-95 (6th Cir. 1996)). With respect to the meaning of "necessary," the court approvingly quoted the Fourth Circuit's analysis:

> The "necessary" element . . . requires the demonstration of a direct linkage between the proposed accommodation and the "equal opportunity" to be provided to the handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary."

Id. at 460 (quoting Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 604 (4th Cir. 1997)) (emphasis added). Thus, the Third Circuit made clear that the FHAA's requirement that an accommodation "may be necessary to afford such person equal opportunity to use and enjoy a

dwelling," 42 U.S.C.A. § 3604(f)(3)(B), requires a causal nexus between the requested accommodation and the requested accommodation's "necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." Lapid-Laurel, 284 F.3d at 459. Further, the court indicated that the requisite nexus exists when the requested accommodation provides a "direct amelioration of a disability's effect." Id. at 460.

The facts of Lapid-Laurel are illustrative. The plaintiff was a real estate development firm that unsuccessfully sought a zoning variance in order to build a 95-bed care facility for the elderly. Id. at 445. In the context of a summary judgment motion, the court found that "it is clear that [plaintiff] demonstrated that a use variance was necessary to achieve an equal opportunity for the elderly handicapped to live in a residential area of Scotch Plains." Id. at 460. This requirement was satisfied by a showing that the requested accommodation could ameliorate the effects of the disability at issue:

> The elderly handicapped who need skilled nursing care usually are not able to live in their own houses. They must live in some sort of institutional setting in order to receive the assistance or health care that they need. No institutional health care facilities are permitted without a use variance in the neighborhoods zoned R-1 residential in Scotch Plains. Therefore, a use variance is necessary for the elderly handicapped to have an equal opportunity to live in a residential area of Scotch Plains.

Id.

The court required a causal nexus not merely between the needs of the elderly disabled and an institutional health care facility, but also between the needs of the elderly disabled and the specific size of the building for which plaintiffs sought a variance. The court followed other circuits that "have required a plaintiff to show that the size of the proposed facility either would be necessary for the facility's financial viability (and therefore necessary to give the handicapped

an equal opportunity to live in a residential neighborhood) or would serve a therapeutic purpose, (and would therefore be necessary to ameliorate an effect of the handicap)." Id. at 461 (citations omitted). Thus, when an accommodation facilitates either the therapeutic purposes or financial viability of a facility for the disabled, there is a causal link between the disabilities addressed by the facility and the accommodation.

The Third Circuit's causation analysis is consistent with - and implied by - both examples in the FHAA regulations: exemption from a "no pets" policy to permit a blind person's seeing-eye dog and exemption from a first-come, first-served parking policy to accommodate the impaired mobility of someone with multiple sclerosis. 24 C.F.R. § 100.204(b). In each example, the effect of a person's disability, i.e., an inability to see and impaired mobility, is ameliorated by the required accommodation. As Judge Calabresi helpfully puts it, "the *need* that was created by the particular handicap" is accommodated. Salute, 136 F.3d at 308 (Calabresi, dissenting) (italics in original; other emphasis added).

Here, Plaintiff contends that the Complaint sufficiently alleges the causal nexus required for her requested accommodation to be "necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." Lapid-Laurel, 284 F.3d at 457. Plaintiff argues that her "disability has led to her unemployment and reliance on SSI, income that does not satisfy Defendants' minimum-income requirement." Plaintiff's Opposition Brief, 13. Specifically, a number of disabilities, including a stroke, "have rendered [Plaintiff] unable to work." Complaint, ¶7. As a result, Plaintiff's stream of income is limited to federal Supplemental Security Income and her S-RAP "income-based rental assistance grants," Id. at ¶9, which, combined, do not meet Defendants' minimum income requirement. Plaintiff's argument runs, just as a blind person's

inability to see, and hence her need for an exemption from a "no pets" policy for a seeing eye dog, is created by the blind person's disability, similarly, Plaintiff's inability to work, and hence her need for an exemption from the minimum income requirement, is created by Plaintiff's disability.

But this analogy does not hold. The blind person's need for an exemption to the "no pets" policy is created by her disability, i.e., her inability to see. If the blind person could see, she would have no need for the exemption from the "no pets" policy; it is her blindness that causes the need for an accommodation. In contrast, the facts plead in the Complaint make it unclear whether Plaintiff's need for an exemption to the minimum income requirement was created by Plaintiff's disability, and her resultant inability to work. Even if Plaintiff were not disabled and was currently able to work, at least on the facts plead in the Complaint, she might still require an exemption from the minimum income policy to rent Defendants' apartment. Thus, it is not Plaintiff's inability to work that causes her need for accommodation, but her lack of sufficient income, which, according to the Complaint, may or may not be caused by her disability. The Complaint says nothing about Plaintiff's pre-disability income, and if Plaintiff's pre-disability income would have been insufficient to meet the Defendants' minimum income requirement, then her disability cannot have caused her inability to do so. In short, while bending the "no pets" policy directly ameliorates the effects of a blind person's disability, relieving Plaintiff of Defendants' minimum income policy would not directly ameliorate the effects of Plaintiff's disability, as it is unknown if Plaintiff's insufficient income is causally linked to her disability.

Geter v. Horning Brothers Management, 537 F.Supp. 2d 206 (D.D.C. 2008) is instructive on the causation issue. There the plaintiff tenant became disabled from diabetes several months

after becoming a tenant. Based on his disability, he was awarded disability benefits from the Social Security Administration. Geter, 537 F.Supp.2d at 208 (citation omitted). Despite paying his rent and late fees for several years following the onset of his disability, at some point, the plaintiff requested a reduction in his monthly rent payment as an accommodation to his disability. Id. The court rejected the plaintiff's FHAA accommodation claim on causation grounds:

> Defendants rightly contend that plaintiff cannot demonstrate causation because he cannot " 'show that, but for the accommodation, [he] likely will be denied an equal opportunity to enjoy the housing of [his] choice.' " Plaintiff does not allege that because of his disability, he lacked the financial means to pay the rent. Indeed, such a claim is belied by plaintiff's own evidence showing that he continued to pay his rent and late payment fees for more than three years, from the onset of his disability in November 2003 until February 2007. Am. Compl., Att. C; see Att. B at 2 ("I have been duly providing all late fee's [sic] as required by the lease."). Plaintiff therefore has not established a causal link between his disability and an inability to pay the amount of rent required by the lease.

Id. at 209. In like fashion, although Plaintiff seeks a waiver of a minimum income requirement (which may pose no cost to Defendants) in the case at bar, rather than a reduction in rent, Plaintiff's Complaint fails to allege that "because of [her] disability, [she] lacked the financial means" to meet Defendants' minimum income requirement. Id. This is an essential fact to be plead, because unless Plaintiff was capable of meeting the minimum income requirement prior to becoming disabled, her inability to meet that requirement cannot be "because of" her disability.[4]

Plaintiff's inability to satisfy the FHAA's causal nexus requirement on the facts plead in the Complaint is also apparent from a comparison with Bentley v. Peace and Quiet Realty, 367

[4]As explained infra at § III., Plaintiff could also potentially satisfy the causation requirement if Defendants' apartment fulfilled some sort of therapeutic purpose. Then, waiving the minimum income requirement could potentially address a need created by Plaintiff's disability. The Complaint contains no such allegation.

F.Supp. 2d 341 (E.D.N.Y. 2005) (citations omitted). In that case, due to her difficulty climbing stairs, a disabled plaintiff requested (as a reasonable accommodation) to move to a vacant lower-level apartment without being subject to a rent increase permitted under the New York rent stabilization law. Bentley, 367 F.Supp. 2d at 343. The defendants would rent the apartment to the plaintiff, but only if she paid the applicable rent increase. Id. Relying on Salute, the defendants argued that the requested accommodation is "essentially an accommodation to the plaintiff's poverty and not her disability, and consequently is beyond the scope of the FHAA." Id. at 346. The court rejected this argument and distinguished Salute: "Because the requested accommodation was not 'framed by the nature of their handicap' the [Salute] court determined it was not cognizable under the FHAA. Unlike the plaintiffs in Salute, Bentley seeks an accommodation that directly relates to her handicap, specifically her inability to walk up and down the stairs to her apartment unit." Id. at 347 (citation omitted).

Similar analysis does not adhere to the case at bar. An exemption from Defendants' minimum income policy does not "directly relate[]" to Plaintiff's disability. Even if Plaintiff were not disabled, she might still have a need for her requested accommodation because of insufficient income, undermining any causal link between her disability and the requested accommodation. In contrast, if the plaintiff in Bentley were not disabled, and capable of climbing the stairs at issue, she would have no need for the requested accommodation, i.e., the higher-priced lower-level apartment.[5]

---

[5]Note that had Ms. Bell been a tenant in Defendants' apartment before becoming disabled, and her disability then rendered her unable to meet the minimum income requirement, the waiver of the minimum income requirement would have a causal nexus to her disability, i.e., her need for accommodation would have been created by her disability.

**4. The Impact of Barnett**

Plaintiff argues that the "changing landscape of federal disability law," Plaintiff's Brief, 10, as prompted by the Supreme Court's decision in U.S. Airways v. Barnett, 535 U.S. 391 (2002), undercuts this analysis. The Court disagrees. The plaintiff in Barnett was a cargo handler for U.S. Airways who, after injuring his back, exercised his rights under the company's seniority system to transfer to a job in the mail room. Thereafter, when other employees senior to the plaintiff exercised their rights under the seniority system to bid for the mail room job, the plaintiff requested that the company make an exception to its seniority system to accommodate his disability, and let him keep his job in the mail room. U.S. Airways refused. The Court decided that "the seniority system will prevail in the run of cases," but that "[t]he plaintiff remains free to present evidence of special circumstances that make 'reasonable' a seniority rule exception in the particular case." Barnett, 535 U.S. at 394. This holding assumes that, at least in some circumstances, making an exception to a seniority rule can be a required accommodation under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.[6]

The Court found that "the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach." Id. at 397. The Court stated:

---

[6] There is precedent for looking to the ADA as a guide when interpreting the FHAA: "Although Barnett involved a claim under the Americans with Disabilities Act [], in determining the reach of the FHAA's accommodation requirement, courts frequently look to the Rehabilitation Act and the ADA." Bentley, 367 F.Supp. 2d at 348 n.2 (citations omitted). Though it is not clear that the precise scope of accommodations that "may be necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C.A. § 3604(f)(3)(B), under the FHAA is controlled by precedent from an ADA case in an employment context, the Court will assume arguendo that Barnett's analysis is applicable to the case at bar.

> [P]references will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy. By definition any special "accommodation" requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.

Id. (emphasis in original). The Court continued, "[t]he simple fact that an accommodation would provide a 'preference' - in the sense that it would permit the worker with a disability to violate a rule that others must obey - cannot, in and of itself, automatically show that the accommodation is not 'reasonable.'" Id. at 398 (emphasis in original).

However, this analysis hardly changes the "landscape of federal disability law." Plaintiff's Brief, 10. The paradigmatic example of a blind tenant's right to an exemption from a "no pets" policy for a seeing eye dog allows a person "with a disability to violate a rule that others must obey," thereby treating a tenant "with a disability differently, i.e., preferentially." Barnett, 535 U.S. at 397-98. So too with the FHAA regulations' example of requiring an exemption from a "first come, first served" parking policy for a person with impaired mobility due to multiple sclerosis. 24 C.F.R. § 100.204(b). The principle that reasonable accommodations for persons with disabilities involve preferential treatment is not new, and does not undercut the requirement of a causal nexus between a person's disability and the requested accommodation. Lapid-Laurel, 284 F.3d at 459.

More important, however, is Barnett's implicit acceptance of the proposition that a seniority system is appropriately subject to the demands of the ADA's reasonable accommodation requirement. In dissent, Justice Scalia argued that, whatever the reasonableness

of the plaintiff's request, the ADA does not require accommodation in the form of an exemption from a seniority system. Barnett, 535 U.S. at 412 (Scalia, J., dissenting). Justice Scalia explained his view of the scope of the ADA's accommodation requirement as follows:

> [The ADA orders] employers to modify or remove (within reason) policies and practices that burden a disabled person "because of [his] disability." In other words, the ADA eliminates workplace barriers only if a disability prevents an employee from overcoming them-those barriers that would not be barriers but for the employee's disability. These include, for example, work stations that cannot accept the employee's wheelchair, or an assembly-line practice that requires long periods of standing. But they do not include rules and practices that bear no more heavily upon the disabled employee than upon others-even though an exemption from such a rule or practice might in a sense "make up for" the employee's disability.

Id. at 413 (emphasis in original). In short, Justice Scalia argued that "the ADA clears away only obstacles *arising from* a person's disability and nothing more." Id. at 417 (italics in original; other emphasis added). U.S. Airways' seniority system, on this view, cannot be subject to a disabled person's request for accommodation because it is not an obstacle "that would not be [a] barrier[] but for the employee's disability." Id. at 413 (emphasis in original). It is the employee's lack of seniority, in addition to he fact that he is disabled, that makes the seniority system an obstacle to his continued employment. As Justice Scalia explained:

> [A seniority system] burdens the disabled and nondisabled alike. In particular cases, seniority rules may have a harsher effect upon the disabled employee than upon his co-workers. If the disabled employee is physically capable of performing only one task in the workplace, seniority rules may be, for him, the difference between employment and unemployment. But that does not make the seniority system a disability-related obstacle, any more than harsher impact upon the more needy disabled employee renders the salary system a disability-related obstacle.

Id.

The majority opinion in Barnett did not directly address Justice Scalia's view of the scope of accommodations required by the ADA. However, the Court's holding, which implies that a

seniority system may have to make exceptions to accommodate employees with disabilities in some circumstances, implicitly rejects Justice Scalia's position that "the ADA eliminates workplace barriers only if a disability prevents an employee from overcoming them-those barriers that would not be barriers but for the employee's disability." Id. (emphasis added). Moreover, like the seniority system at issue in Barnett, Defendants' minimum income requirement in this case is not an obstacle that "would not be [a] barrier[] but for" Plaintiff's disability. Id. (emphasis in original). Both rules fail Justice Scalia's test, and on his view, would not be subject to requests for accommodation.

But it does not follow here that Plaintiff's request for an exemption from Defendants' minimum income requirement falls within the scope of the FHAA's accommodation requirement. The Court's implicit rejection of Justice Scalia's test for accommodations does not mean that the Court has done away with the Third Circuit's requirement of a "nexus" between the accommodation and the disabled individual's disability, i.e., that the need accommodated "was created by the particular handicap." Salute, 136 F.3d at 308 (Calabresi, dissenting). In other words, Barnett is consistent with the Third Circuit's endorsement of the proposition that a "necessary" accommodation within the meaning of the FHAA provides a "direct amelioration of a disability's effect." Lapid-Laurel, 284 F.3d at 460 (quoting Bryant Woods Inn, 124 F.3d at 604).

While the plaintiff in Barnett would not require an accommodation if he had sufficient rights under the seniority system, his need for a job in the mail room (as opposed to being a cargo handler), and hence for U.S. Airways to bend the seniority system, was created by his disability. Modifying the seniority system to provide the plaintiff with the mail room job would provide a "direct amelioration of" his disability's effect, i.e., his inability to work at a physically

demanding job. Absent the plaintiff's disability, he could continue working as a baggage handler, and would have no need for the accommodation. This demonstrates a causal nexus between the plaintiff's disability and the requested accommodation.

Not so in the case at bar. According to the allegations of the Complaint, even if Plaintiff were not disabled, she still might not have sufficient income to meet Defendants' minimum income requirement. Thus, while her inability to work is directly linked to her disability, her inability to meet Defendants' minimum income requirement because of an inability to work in a job with a sufficient income is not necessarily linked to her disability, i.e., her deficiency in income earning may exist independent of any ensuing disability. Under the circumstances, bending the minimum income requirement would not "directly ameliorate" the effects of Plaintiff's disability, as it is unknown from the Complaint whether Plaintiff's inability to meet the minimum income requirement has anything to do with her disability. Since the Complaint makes no allegations about Plaintiff's income or employment status before she was disabled, or what her income might be if she were not disabled, it fails to plead a causal nexus between Plaintiff's disability and her inability to meet the minimum income requirement. Stated differently, if Plaintiff was incapable of meeting the minimum income requirement prior to her disability, then her disability did not cause her need for a waiver of that requirement, and granting her an exception to that requirement could not ameliorate an effect of her disability. Because the Complaint does not allege otherwise, it fails to state a causal nexus between Plaintiff's disability and Defendants' minimum income requirement, and hence that the "accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." Lapid-Laurel, 284 F.3d at 457 (emphasis added).

**5. Giebeler's Dicta**

Plaintiff urges this Court to follow the Ninth Circuit's reasoning in Giebeler v. M&B Associates, 343 F.3d 1143 (9th Cir. 2003), which relied heavily on Barnett. In Giebeler, the court held that a prospective tenant, who could not work because he had AIDS, and hence could not meet defendants' minimum income policy, was entitled to an exemption from the defendants' policy prohibiting co-signers on lease agreements. Unlike the case at bar, it was clear that the defendants' minimum income requirement was for "an amount less than [the plaintiff] had earned before he became ill." Giebeler, 343 F.3d at 1145. Thus, the court held that, even on Justice Scalia's understanding of the concept of an accommodation, the plaintiff's request fell within the ambit of accommodations covered by the FHAA:

> It is worth noting that Giebeler's inability to pay the rent without drawing on his mother's financial resources was not, in Justice Scalia's words, the result of "obstacles that have nothing to do with the disability." Although Barnett's inability to meet the seniority requirement for the position he wanted was simply the result of his tenure in his job, not of his disability, the reason Giebeler could not pay the rent from his own income was that his disability prevented him from working and earning a monthly paycheck as he used to. So, applying Justice Scalia's understanding of the accommodation concept, Giebeler's request that he be permitted to assure his prospective landlord of payment through his mother's financial resources rather than his own would qualify as an accommodation.

Id. at 1151 (citation omitted). As explained above, this type of argument is unavailable to Plaintiff, as the Complaint does not allege that her "disability prevented [her] from working and earning a monthly paycheck [sufficient to meet the minimum income requirement] as [she] used to." Id. The Complaint says nothing about Plaintiff's earnings prior to becoming disabled.

Importantly, however, supportive of Plaintiff's position here, the Ninth Circuit went further in dicta:

> Yet, under Barnett, even if one disregards the fact that Giebeler had formerly held a qualifying job and was forced to leave it because of his disability, the accommodation he seeks might still qualify as an accommodation under the FHAA, as long as adjusting [the defendants'] method of judging financial responsibility would aid him in obtaining an apartment he could otherwise not inhabit because of his disability.

Id. In the Giebeler court's view, Barnett stands for the proposition that "accommodation requirements . . . are not limited only to lowering barriers created by the disability itself." Id. at 1154. Thus, the court stated that even if the plaintiff was not able to satisfy the minimum income requirement prior to becoming disabled, and hence his need for an exemption was not created by his disability, the plaintiff still might be entitled to an accommodation. But it is unclear how this dicta can be correct. If the plaintiff was unable to meet the minimum income requirement before becoming disabled, it is unclear how "adjusting [the defendants'] method of judging financial responsibility would aid him in obtaining an apartment he could otherwise not inhabit because of his disability." Id. at 1151 (emphasis added). In other words, if the plaintiff would have been unable to meet the minimum income requirement even if he were not disabled, his disability has nothing to do with his inability to meet the minimum income requirement, and hence his request for an accommodation.

As explained supra at § II.B.4., the rejection of Justice Scalia's position that "the ADA eliminates workplace barriers only if a disability prevents an employee from overcoming them - those barriers that would not be barriers but for the employee's disability," Barnett, 535 U.S. at 413 (emphasis in original), does not mean that a requested accommodation need not have any causal nexus to the Plaintiff's disability. Permitting accommodations that lack any causal nexus to a disability would be like giving a person with impaired mobility due to multiple sclerosis an

exemption to a "no pets" policy. Given that the Giebeler court acknowledged that, on its view of the accommodation requirement, a requested accommodation must assist a disabled individual "in obtaining an apartment he could otherwise not inhabit because of his disability," Giebeler, 343 F.3d at 1151, it is unclear how that requirement could be satisfied if the plaintiff lacked the capacity to meet the minimum income requirement prior to becoming disabled.

The Giebeler court also emphasized FHAA zoning cases where "reasonable accommodations can function to adjust for special needs that flow from the inability of disabled residents to meet otherwise applicable financial requirements." Id. For example, Giebeler referred to Turning Point, Inc. v. Caldwell, 74 F.3d 941 (9th Cir. 1996), where the Ninth Circuit held the defendant city violated the FHAA reasonable accommodation requirement "by refusing to waive annual review on the special use permit that allowed [a] shelter to house more than the maximum number of persons dictated by the area zoning policy," Giebeler, 343 F.3d at 1151. The occupancy limit was found by the district court to pose a severe financial burden on the shelter, 75% of whose residents were disabled, and the court "reasoned that annual review of the special use permit - a process that threatened to discontinue the financially necessary waiver of the maximum occupancy rule in the future - was unjustified and violated the FHAA's reasonable accommodation mandate." Id. at 1152. In short, the financial needs of a homeless shelter servicing disabled persons were subject to the accommodation requirement under the FHAA. The Third Circuit adopted the same analysis in Lapid-Laurel: a plaintiff can meet the FHAA's causation requirement by showing that "the size of the proposed facility . . . would be necessary for the facility's financial viability." Lapid-Laurel, 284 F.3d at 461; see also Dr. Gertrude A. Barber Center, 273 F.Supp. 2d at 652 ("A provider of housing for the handicapped may establish

the necessity of a requested accommodation through evidence that it must maintain a certain minimum level of occupancy for its own financial viability") (citation omitted).

______But these decisions - and the underlying principle that "governmental entities may be required to bend zoning and land use requirements in recognition of the need of disabled individuals for group living arrangements," including the "need to take advantage of economies of scale to make such resources available to the less well-off," which is "the result of the economic circumstances of the residents," Giebeler, 343 F.3d 1154-55 (citation omitted) - do not mean that the FHAA requires accommodations that lack a causal nexus to a disability. The accommodation of the economic needs of group living arrangements is obviously responsive to the need of disabled individuals for therapeutic services available in group living arrangements. The fact that such services "can be, and are, provided in individual houses or apartments to more prosperous individuals," id. at 1155, does not eliminate the causal nexus between disability and accommodation. A disabled person's need for the services provided in a therapeutic group living arrangement is still created by her disability. The fact that a wealthy disabled person could fulfill her therapeutic needs through personal care in her own apartment does not change the fact the less well off disabled persons require group living arrangements, at least in part, because of their disability, and would not need such arrangements- or the accommodations they require - if they were not disabled. The case at bar is clearly distinguishable from such cases in that Plaintiff does not allege that she seeks Defendants' apartment for any therapeutic purpose, and further, even if she were not disabled, she still might be unable to meet Defendants' minimum income requirement.

For the foregoing reasons, the Court declines to follow the Giebeler court's dicta, insofar

as such dicta would permit an accommodation to Plaintiff absent a showing that her disability caused her inability to meet Defendants' minimum income requirement.

**III. Dismissal of Plaintiff's FHAA Claim; Amending the Complaint; and Plaintiff's State Law Claims**

For the above reasons, Plaintiff's Complaint is dismissed for failing to allege a sufficient causal nexus between her disability and the accommodation she seeks such that the accommodation "may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C.A. § 3604(f)(3)(B). This determination does not require the Court to determine whether the position taken by the Second and Seventh Circuits in Salute and Hemisphere Building Co. - that a disabled plaintiff's financial condition, even if caused by her disability, is not subject to accommodation under the FHAA - is correct. Even if the FHAA is read in a broader fashion than that given to it in Salute and Hemisphere Building Co., nonetheless the FHAA only requires reasonable accommodation for a "*need* that was created by [a] particular handicap," Salute 136 F.3d at 308 (Calabresi, dissenting) (italics in original; other emphasis added), and Plaintiff's Complaint does not allege the requisite causal nexus. Thus, Plaintiff's claim falls outside the scope of the FHAA's accommodation requirement, and the Court need not decide whether a disabled plaintiff's financial condition, even if causally linked to her disability, is subject to the FHAA's reasonable accommodation requirement. Plaintiff is granted leave to amend the Complaint if she can, in good faith, plead a causal nexus between her disability and the requested accommodation.[7]

[7] In an amended complaint, Plaintiff might state a causal nexus by alleging, inter alia, that, based on her pre-disability income, or some other consideration, her inability to meet Defendants' minimum income requirement was caused by her disability. Plaintiff might also

Jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C.A. 1367(c), which states in relevant part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C.A. § 1367(c). Absent some compelling circumstances, it is generally proper for the district court to decline to exercise supplemental jurisdiction. See Shaffer v. Board of School Directors of Albert Gallatin Area School , 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction [over state law claims] should be declined where the federal claims are no longer viable") (citation omitted); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (recognizing that if the district court has dismissed all claims over which it has original jurisdiction, the court must decline to decide pendent state claims unless "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so") (citation and quotations omitted).

Furthermore, district courts should not decide issues of state law "both as a matter of

---

establish a causal nexus by alleging that Defendants' apartment fulfills some therapeutic purpose related to her disability, and hence addresses a need created by her disability. For example, the plaintiff in Bentley, supra, sought "an accommodation that directly relates to her handicap, specifically her inability to walk up and down the stairs to her apartment unit." Bentley, 367 F.Supp. 2d at 347. In any event, if Plaintiff is able to allege a causal nexus between her disability and the requested accommodation, Defendants will be granted an opportunity to renew their motion to dismiss, and argue that the accommodation of a disabled plaintiff's financial condition, even if such condition is caused by her disability, is not required by the FHAA - at least in the context of this case. This specific issue, and the policy questions it raises, were not adequately addressed by the parties' briefs. These considerations include whether a reasonable - and fair - interpretation of the FHAA's reasonable accommodation requirement can distinguish between disabled individuals based on their pre-disability income, and how to treat plaintiffs who have always been disabled, and who for that reason, never could have met a minimum income requirement. These issues, which were not specifically addressed by the parties, might provide policy grounds for adopting the reasoning of Salute and Hemisphere Building Co.

comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers Of America v. Gibbs, 383 U.S. 715, 726 (1966). Courts in this circuit have consistently declined to exercise supplemental jurisdiction over state claims when all federal claims have been dismissed. See, e.g., V-Tech Services, Inc. v. Street, 215 Fed. Appx. 93, 96 (3d Cir. 2007) (affirming the district court's refusal to exercise supplemental jurisdiction over fraud, promissory estoppel, breach of contract, and unjust enrichment claims after dismissal of RICO claims); Wall v. Dauphin County, 167 Fed. Appx. 309, 313 (3d Cir. 2006) (approving dismissal of state claims for lack of jurisdiction after dismissal of plaintiff's § 1983 and § 1985 claims); Mosca v. Cole, 384 F.Supp. 2d 757, 770 (D.N.J. 2005) (remanding remaining state LAD and other claims back to state court after plaintiff's federal claims were dismissed by the district court).

Defendants' reasonable accommodation and disparate impact claims under the NJLAD raise important issues that should be addressed through a "surer-footed reading" of New Jersey state law in the state courts. Gibbs, 383 U.S. at 726. Because Plaintiff's sole federal claim is dismissed without prejudice, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and thus will not consider Defendants' motion to dismiss such claims at this time.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's FHAA reasonable accommodation claim is dismissed without prejudice and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, unless Plaintiff successfully pleads a federal claim that can survive review.

Dated July 15, 2008

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge